UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

HUMBERTO RESTREPO, *as Chairman of the Joint Industry Board of the Electrical Industry*,

Petitioner,

– against –

RNW ELECTRIC CORP.,

Respondent.

**REPORT AND RECOMMENDATION**

26-cv-721 (EK) (PK)

**Peggy Kuo, United States Magistrate Judge**

Humberto Restrepo ("Petitioner"), as Chairman of the Joint Industry Board of the Electrical Industry ("JIB"), filed this action to confirm and enforce an arbitration award rendered on November 14, 2025 (the "Award," Dkt. 1-10) pursuant to the collective bargaining agreement (the "CBA," Dkt. 1-3) between Local Union No. 3 of the International Brotherhood of Electrical Workers (the "Union") and RNW Electric Corp. ("Respondent") under Section 502(a)(3) of Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(3), and Section 301 of the Labor Management Relations Act ("LMRA"), as amended, 29 U.S.C. § 185. (Pet. ¶ 1, Dkt 1.)

On June 18, 2026, the Court granted Plaintiff's request to treat the Petition as an unopposed motion for summary judgment ("Motion," Dkt. 11), and the Honorable Eric R. Komitee referred the Motion to me for a Report and Recommendation. To date, Respondent has not responded to the Petition or Motion or otherwise sought to challenge the Award. For the reasons set forth below, I respectfully recommend that the Motion be granted.

## BACKGROUND

### I. The Plans

Petitioner is the Chairman of JIB, administrator of various employee benefit multi-employer plans established and maintained pursuant to a collective bargaining agreement between the Union and certain employer associations and employers in the electrical and other related industries. (Pet. ¶ 4.)

Within the meaning of Sections 3(16)(A) and 3(21)(A) of ERISA, 29 U.S.C. §§ 1002(16)(A)(i), 1002(21)(A), JIB is the administrator and fiduciary for employee benefit plans, including the Pension, Hospitalization and Benefit Plan of the Electrical Industry, the Dental Benefit Fund of the Electrical Industry, the Educational and Cultural Trust Fund of the Electrical Industry, the Annuity Plan of the Electrical Industry, and the Health Reimbursement Account Plan of the Electrical Industry, the Deferred Salary Plan ("DSP"), and the Joint Apprenticeship and Training Program, and the National Electrical Benefit Plan (collectively the "ERISA Plans"). (*Id.* ¶ 5.) Each of the ERISA Plans is an employee benefit plan and a multi-employer plan under ERISA. 29 U.S.C. §§ 1002(3), (37). (*Id.* ¶ 7.)

JIB also collects assessments from the Union, employee loan payments due to the Union and certain plans, and contributions to fund the operations of JIB (collectively, "Non-ERISA Plans"). (*Id.* ¶ 9.)

The DSP is a tax-qualified profit-sharing plan with a cash or deferred arrangement within Section 401(k) of the Internal Revenue Code. (*Id.* ¶ 8.) Under the CBA, "employers are required to deduct a specified percentage from the weekly wages of each eligible employee covered" and "to remit such amounts" and "any additional salary deferrals made at the election of the employee" (collectively, "Employee Contributions") to the DSP, along with related payroll reports. (*Id.*) Employers are also

required to remit employer contributions to the DSP on behalf of all covered employees ("Employer Contributions," together with Employee Contributions, "DSP Contributions"). (*Id.*)

As the administrator of both the ERISA and Non-ERISA Plans, the JIB collects DSP Contributions, as well as contributions from the Non-ERISA Plans ("JIB Contributions," together with DSP Contributions, "Required Contributions"). (*Id.* ¶¶ 5, 9.)

Respondent was an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. § 1002(5) and Section 501 of the LMRA, 29 U.S.C. § 142. (*Id.* ¶ 14.)

## II. The Collective Bargaining Agreement, Collection Policy, and Arbitration Procedures

On October 11, 2023, Respondent entered into a project labor agreement ("PLA," Ex. B to Pet., Dkt. 1-2) with the New York City School Construction Authority, agreeing to be bound by the CBA covering the period of April 13, 2022 to April 9, 2025.[1] (Pet. ¶ 18; *see also* PLA Notification Letter, Ex. A to Pet., Dkt. 1-1.) A memorandum of agreement between the Association and the Union (Ex. D to Pet., Dkt. 1-4) extended the CBA to cover April 9, 2025 to April 12, 2028. (Pet. ¶ 21.) The Union, Association, or Respondent have not provided any notice to terminate the CBA, and therefore, Respondent has been bound by the CBA from October 11, 2023 to the present. (*Id.* ¶¶ 22–23.)

The CBA requires Respondent to make contributions to the ERISA Plans and Non-ERISA Plans, as well as to submit weekly payroll reports that provide the names, gross wages, and hours worked for each worker of the company for which contributions are made. (*Id.* ¶ 24.) Under the CBA, Petitioner directly receives a weekly remittance of contributions from each of the ERISA Plans except for the DSP. (*Id.* ¶ 6.) Employers, such as Respondent, are required to send DSP Contributions and related payroll data to DSP in the care of a third-party record keeper and investment manager retained by JIB. (*Id.* ¶ 11.)

[1] The Petition misstates the end of the CBA's coverage as April 29, 2025.

In addition, the CBA requires that employers "shall be liable for the remedies under Section 502(g)(2) of ERISA, including liquidated damages of twenty (20%) percent, in the event of entry of judgment against the Employer in an action or proceeding to collect delinquent contributions." (*Id.* ¶ 26) (citing CBA, Article II, § 12(a); *see also* Collection Policy §§ (D), (E)(2)).

The JIB established the Policy for the Collection of Delinquent Contributions ("Collection Policy," Ex. E to Pet., Dkt. 1-5), which was incorporated into the CBA. (Pet. ¶¶ 25, 27.) The Collection Policy states that if an employer fails to remit contributions and has not submitted payroll reports for such unpaid contributions, the JIB may "use a prior week payroll report submitted by the employer to calculate the amount of Contributions due from the employer." (Art. II, § (F)(1).) Further, the Collection Policy states that "the interest rate to be charged on delinquent contributions will be the IRS § 6621 rate plus 2.5%, with the amount of interest at the IRS § 6621 to be deposited into the benefit funds and the amount of interest collected over the IRS § 6621 to be deposited into the Benefit and Wage Delinquency Fund, except that interest charged on NEBF contributions will continue to be 10% pursuant to that Plan's rules." (Collection Policy, Amend. 2; *see also* Pet. ¶ 30.)

The JIB also established Arbitration Procedures and Rules for Disputes Regarding Delinquency Contribution Disputes and Audits ("Arbitration Procedures," Ex. F to Pet., Dkt. 1-6) for governing employer delinquencies, which state that the arbitrator has jurisdiction to determine any disputes between the "JIB against an Employer, related to the Employer's obligation to contribute to the Funds, including but not limited to Audits, Delinquencies, interest, liquidated damages, and attorneys' fees and costs . . . ." (§§ I(K), II(A); *see also* Pet. ¶¶ 32–33.)

**III. Petitioner's Arbitration Award**

Respondent failed to report or pay, *inter alia*, JIB Contributions and DSP Contributions for payroll weeks ending June 11, 2025 and July 2, 2025 to the present. (*Id.* ¶ 34.) On October 9, 2025,

Petitioner issued a Notice of Intent to Arbitrate and Statement of Claims (Dkt. 1-1) to Respondent pursuant to the Collection Policy and Arbitration Procedures. (Pet. ¶ 35.) In accordance with Arbitration Procedures, Petitioner served Respondent with the paper submissions on November 13, 2025. (*Id.* ¶ 36.) Because neither party requested in person proceedings, the arbitration occurred by written submission. (*Id.* ¶ 37; *see also* Pl. Mem. in Arbitration, Ex. H to Pet., Dkt. 1-8; Award at 6.)

Respondent failed to respond to Petitioner's written submission or respond to the JIB's claims. (Pet. ¶ 38; Award at 6.)

On November 14, 2025, the arbitrator rendered a written decision and found that Respondent "violated the CBA, ERISA, and the LMRA by failing/refusing to pay contributions for the period June 11, 2025 through November 5, 2025" and awarded Petitioner $722,632.14 consisting of (1) $443,128.54 in delinquent JIB Contributions, (2) $112,849.63 in delinquent DSP Contributions, (3) $30,576.11 in JIB interest, (4) $10,415.14 in DSP interest, (5) $11,914.07 in additional interest, (6) $111,198.65 in liquidated damages, (7) $600 in attorneys' fees, (8) $250 in administrative fees, and (9) $1,700 in arbitrator fees. (Pet. ¶ 40; Award at 4–5.) The Arbitrator also found that Respondent "is responsible for any costs, including reasonable attorney's fees, incurred by JIB in enforcing this Opinion and Award," and "[i]nterest shall continue to accrue on the principal amounts owed until paid in full." (Pet. ¶¶ 41–42 (citing Award at 8).) Further, the Award states, "nothing herein shall prevent the JIB from adjusting the amounts due based on the Employer's submission of required contribution reports and payments to either or both the JIB and Empower Retirement, Inc.," which is the third-party record keeper of DSP Contributions. (Award at 8 n.4; *see also* Pet. ¶¶ 12, 43.)

After the Award was rendered, Respondent submitted reports to the JIB for September 10, 2025 to October 29, 2025, which shows that Respondent owed $115,075.47 in contributions for those weeks, and because those weeks were estimated in the absence of reports, the JIB recalculated that

$394,197.58 was due for the payroll periods June 11, 2025 and July 2, 2025 to October 25, 2025. (*Id.* ¶ 44.) Respondent also remitted payment for DSP Contributions for June 11, 2025 and July 2, 2025 to October 22, 2025; thus, there is an outstanding balance of $4,668.23 owed for DSP Contributions. (*Id.* ¶ 45.)

On February 9, 2026, Petitioner timely filed the Petition to confirm the Award. (*Id.* ¶¶ 45–46; Summary Sheet at 2, Dkt. 1–11); *see also Finkel v. JCF Elec., Inc.*, No. 21-CV-3161 (CBA) (RER), 2022 WL 3682834, at *2 (E.D.N.Y. Aug. 25, 2022). As of that date, an outstanding balance of $554,482.20 on the Award remains unpaid. (Pet. ¶ 46.) Respondent has not answered the Petition or otherwise appeared, and the Clerk of Court entered default against Respondent. On May 21, 2026, Petitioner filed the Motion.

## LEGAL STANDARD

### I. Summary Judgment

Federal Rule of Civil Procedure 56(a) governs motions for summary judgment and provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

"In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (cleaned up). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 242.

## II. Treating a Petition to Confirm an Arbitration Award as an Unopposed Motion for Summary Judgment

"The law regarding unopposed petitions seeking confirmation of arbitration awards is well-established." *Elec. Indus. Bd. of Nassau & Suffolk Cntys. v. Wire to Water, Inc.*, No. 26-CV-01220 (GRB) (LGD), 2026 WL 2050959, at *3 (E.D.N.Y. July 15, 2026) (citing *Trs. of Ne. Carpenters Health, Pension, Annuity, Apprenticeship, & Lab. Mgmt. Coop. Funds v. W. Contractors, LLC*, No. 20-CV-1574 (JS) (ARL), 2024 WL 278463, at *2 (E.D.N.Y. Jan. 25, 2024)). The Second Circuit has held that because default judgments in confirmation and vacatur proceedings are generally inappropriate, courts "should treat an unanswered petition" to confirm and vacate "as an unopposed motion for summary judgment." *D. H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 109 (2d Cir. 2006). Materials such as a collective bargaining agreement, collection policy, notice of intent to arbitrate, and the arbitration award itself are "materials" that "courts in this Circuit have found sufficient to convert an unopposed petition to confirm an arbitration award into a motion for summary judgment." *See Elec. Indus. Bd. of Nassau*, 2026 WL 2050959, at *3 (citing *D.H. Blair*, 462 F.3d at 109–10). "If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied *even if no opposing evidentiary matter is presented*." *Id.* (emphasis in original).

"Nonetheless, a court's review of labor arbitration awards 'is narrowly circumscribed and highly deferential — indeed, among the most deferential in the law.'" *Elec. Indus. Bd. of Nassau*, 2026 WL 2050959, at *3 (citing *Trs. of Ne. Carpenters Health, Pension, Annuity, Apprenticeship, & Lab. Mgmt. Coop. Funds v. Upstate Interiors, LLC*, No. 19-CV-326 (MKB), 2021 WL 2576938, at *3 (E.D.N.Y. June 23, 2021)). "The court is forbidden to substitute its own interpretation even if convinced that the arbitrator's interpretation was not only wrong, but plainly wrong." *Loc. 1199, Drug, Hosp. & Health Care Emps. Union, RWDSU, AFL-CIO v. Brooks Drug Co.*, 956 F.2d 22, 25 (2d Cir. 1992). As long as the arbitrator "arguably" "constru[ed] or appl[ied] the contract and act[ed] within the scope of his

authority" and "the award draws its essence from the agreement," the court will typically uphold the arbitrator's decision. *Id.* Only "a barely colorable justification for the outcome reached by the arbitrator is necessary to confirm the award." *D. H. Blair*, 462 F.3d at 110 (internal citations omitted).

**DISCUSSION**

## I. Whether the Court Should Grant Summary Judgment for Petitioner and Confirm the Arbitration Award

The Motion is unopposed and there are no disputed facts from opposing submissions. Therefore, Petitioner has "provided uncontroverted materials that demonstrate an absence of a material issue of fact for trial." *See Finkel,* 2022 WL 3682834, at *3.

Because the Motion is accompanied by the CBA, the Collection Policy, Notice of Intent to Arbitrate and Statement of Claims, Arbitration Procedures, and Award, "there is sufficient record for the Court to review [the Petitioner's] application as an unopposed motion for summary judgment." *See Upstate Interiors, LLC*, 2021 WL 2576938, at *3 (citing *Trs. of the NYC Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Bilt NYG, Inc.*, No. 20-CV-3846 (VSB) (SN), 2020 WL 7211184, at *3 (S.D.N.Y. Nov. 19, 2020)).

Respondent failed to participate in the arbitration, pay the Award in full, oppose the Motion, or provide evidence that challenges the Award. Thus, the Award has "a barely colorable justification." *See D.H. Blair & Co.*, 462 F.3d at 110; *see also Upstate Interiors, LLC*, 2021 WL 2576938, at *4.

Moreover, the arbitrator acted within the scope of his authority by adjudicating a dispute between the JIB and Respondent for non-payment of the Required Contributions, and the CBA and Collection Policy provide for the remedies awarded by the arbitrator. (Pet. ¶¶ 26–33; Award 7–8); *see Upstate Interiors, LLC*, 2021 WL 2576938, at *4. Therefore, the Award "reflects a considered judgment and there is no genuine dispute of material fact." *See id.* (confirming arbitration award based

on materials submitted and where the respondent failed to appear or otherwise contest the award) (citing *Langford v. Beck*, No. 20-CV-4980 (LJL), 2020 WL 6292637, at *2 (S.D.N.Y. Oct. 27, 2020)).

Accordingly, I respectfully recommend that the Court confirm the Award. Because Respondent has made partial payment, I respectfully recommend that the Respondent be ordered to pay the outstanding balance of the Award in the amount of $554,482.20.

## II. Attorneys' Fees

Petitioner requests an award of $860 in attorneys' fees for two hours of legal work completed in connection with this Petition. (Pet. ¶ 52; *see* Invoices, Dkt. 1-12.)

The lodestar or "the product of a reasonable hourly rate and the reasonable number of hours required by the case" creates a "presumptively reasonable fee." *See Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (citing *Arbor Hill Concerned Citizens Neighborhood Assoc. v. County of Albany*, 522 F.3d 182, 183 (2d Cir. 2008) and *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010)).

"Courts routinely award attorneys' fees in cases where a party merely refuses to abide by an arbitrator's award without challenging or seeking to vacate it through a motion to the court so long as the fees are reasonable." *Elec. Indus. Bd. of Nassau*, 2026 WL 2050959, at *3 (internal citations omitted); *see also* Section 502(g)(2)(D) of ERISA, 29 U.S.C. § 1132(g)(2)(D) (permitting the prevailing plaintiff to collect "reasonable attorneys' fees and costs of the action" from the defendant).

### *A. Attorneys' Fees*

#### 1. <u>Reasonable Hourly Rates</u>

"The reasonable hourly rate is the rate a paying client would be willing to pay." *Arbor Hill Concerned Citizens Neighborhood Ass'n*, 522 F.3d at 190. "According to the forum rule, the reasonable rate used to determine the amount of attorney's fees to award is calculated according to the prevailing

rates in the district in which the court sits." *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 173 (2d Cir. 2009) (cleaned up).

The presumptive reasonable hourly rate in this District for partners, adjusted for inflation and market conditions, is currently $450 to $650. *See Elec. Indus. Bd. of Nassau*, 2026 WL 2050959, at *6 (citing *Rubin v. HSBC Bank USA, NA*, 763 F. Supp. 3d 233, 243–44 (E.D.N.Y. 2025)). "However, in ERISA cases, courts in this District award slightly lower fees "in the range of $300 to $450 per hour for partners." *Id.* (citing *Restrepo v. Firequench, Inc.*, No. 24-CV-01466 (ENV) (JRC), 2024 WL 4664618, at *6 (E.D.N.Y. Sep. 24, 2024)).

Here, Petitioner's attorneys, Virginia & Ambinder, LLP, have provided contemporaneous time records detailing the dates, hours expended, and the nature of the work done. (Pet. ¶ 52; Invoices, Dkt. 1-12.) Partner Adrianna Grancio requests an hourly rate of $430. (*Id.*)

Courts in this District have generally approved rates of up to $410 per hour for partners in similar actions from this law firm. *See Elec. Indus. Bd. of Nassau*, 2026 WL 2050959, at *7 (approving a $410 hourly rate for a partner); *see also Restrepo v. Mech. Elec. Corp.*, 806 F. Supp. 323, 332 (E.D.N.Y. 2025) (finding partner's request for $410 per hour was reasonable, although on the "higher" end); *Nat'l Maint., Inc.*, 2024 WL 3593694, at *4 (reducing a partner's hourly rate from $410 to $400); *Restrepo v. New Phase Elec. Contractors, Inc.*, No. 25-CV-0321 (PKC) (MMH), 2025 WL 2482681, at *5–6 (E.D.N.Y. Aug. 28, 2025) (reducing a partner's hourly rate from $410 to $300 because her requested hourly rate was "high compared to her years of experience").

In light of the general range of fees for ERISA cases in this District and the history of approved rates at a reduced level for ERISA cases in this District, I find that $410 is the appropriate hourly rate. Petitioner has not provided additional information to justify a higher rate.

Accordingly, I respectfully recommend that Ms. Grancio's hourly rate be reduced to $410, which is in line with the rate recently approved in another case in this District. *See Elec. Indus. Bd. of Nassau*, 2026 WL 2050959, at *7.

**2. <u>Reasonable Number of Hours</u>**

The number of hours charged must be "reasonable given the amount of work performed and the fact that the case involves . . . relatively straightforward ERISA claims." *Elec. Indus. Bd. of Nassau*, 2026 WL 2050959, at *7 (citing *Restrepo v. Mech. Elec. Corp.*, 806 F. Supp. 3d at 333)).

Here, Ms. Grancio billed 2 hours, which I find reasonable. (Invoices, Dkt. 1-12); *see, e.g., Elec. Indus. Bd. of Nassau*, 2026 WL 2050959, at *7 (finding 7.5 hours billed for a motion to confirm an arbitration award reasonable); *BP Interiors, Corp.*, 2025 WL 1907273, at *4 (concluding 4.8 hours billed was reasonable in a motion to confirm an ERISA arbitration award).

Based on the adjusted hourly rates, I respectfully recommend that the Court award $820 in attorneys' fees.

**III. Costs**

Petitioner requests $506.50 in costs consisting of $405.00 for the court filing fee and $134.35 for the process server in connection with filing and serving the Petition. (*See* Pet. ¶ 55; Mot. at 2).

"Fee awards typically include those reasonable out-of-pocket costs incurred by the attorney, including for items such as shipping, filing fees, process servers, and litigation support." *U.S. Bank Tr. Co. v. Jericho Plaza Portfolio LLC*, No. 24-CV-917 (PAE) (RFT), 2026 WL 476134, at *5 (S.D.N.Y. Jan. 30, 2026), *report and recommendation adopted*, 2026 WL 475059 (S.D.N.Y. Feb. 1, 2026) (citing *HSBC Bank USA, N.A. v. PAKS Holdings, LLC*, No. 19-CV-10193 (PGG) (JLC), 2021 WL 667661, at *8 (S.D.N.Y. Feb. 22, 2021)) (internal citations omitted). The prevailing party still "bears the burden of adequately documenting and itemizing the costs requested." *Elec. Indus. Bd. of Nassau*, 2026 WL

2050959, at *7 (citing *Datiz v. Int'l Recovery Assocs., Inc.*, No. 15-CV-3549 (DRH) (AKT), 2020 WL 5899881, at *14 (E.D.N.Y. Mar. 12, 2020), *report and recommendation adopted as modified*, 2020 WL 3790348 (E.D.N.Y. July 7, 2020)) (internal quotations omitted). "Court fees reflected on the Court's docket and costs for which a claimant provides extrinsic proof, such as an invoice or receipt, are considered sufficiently substantiated, as is a sworn statement or declaration under penalty of perjury that certain amounts were expended on particular items." *Antoine v. Brooklyn Maids 26, Inc.*, 489 F. Supp. 3d 68, 105 (E.D.N.Y. 2020).

Here, I take judicial notice of the $405 filing fee that initiates an action. *See Elec. Indus. Bd. of Nassau*, 2026 WL 2050959, at *7 ("A court may take judicial notice of the payment of a filing fee and, therefore, award that cost.") (citing *W. Contractors*, 2024 WL 278463 at *4) (cleaned up).

Petitioner's requested service fee of $134.35 is sufficiently documented and supported by an invoice. (Motion at 2; Service Fee Invoice, Dkt. 11-1.) Moreover, I find this amount reasonable. *See, e.g., Upstate Interiors*, 2021 WL 2576938, at *6 (finding that the requested service fee $101.50 was reasonable).

Accordingly, I respectfully recommend that the Court award $506.50 in costs.

## IV. Post-Judgment Interest

Post-judgment interest is mandatory in civil actions, and such "interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a); *see also Jericho Plaza Portfolio LLC*, 2026 WL 476134, at *14.

Accordingly, I respectfully recommend that the Court approve post-judgment interest, which is calculated based on the weekly average one-year constant maturity Treasury yield for the week

preceding the date on which judgment is entered. *See* 28 U.S.C. § 1961(a); *Schipani v. McLeod*, 541 F.3d 158, 165 (2d Cir. 2008) (holding that an award of post-judgment interest is "mandatory" and "governed by federal statute").

**CONCLUSION**

For the reasons set forth in this Report and Recommendation, I respectfully recommend that the Court grant the unopposed motion for summary judgment, as follows: (1) confirm the Award and enter judgment in Petitioner's favor, (2) order Respondent to pay the outstanding balance of the Award in the amount of $554,482.20, (3) award Petitioner $820 in attorneys' fees and $506.50 in costs, and (4) award post-judgment interest.

Petitioner is respectfully requested to serve a copy of this Report and Recommendation on Respondent forthwith and file proof of such mailing no later than September 9, 2026. Any objection to this Report and Recommendation must be filed in writing with the Clerk of Court within fourteen (14) days of service. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to timely file any such objection waives the right to appeal the District Court's Order. *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008).

**SO ORDERED:**

*Peggy Kuo*

PEGGY KUO
United States Magistrate Judge

Dated: Brooklyn, New York
September 5, 2026